```
          IN THE UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF ARKANSAS
                    EL DORADO DIVISION
```

LISA ADAMSON, Individually and as
Special Administratrix of the Estate of
CHARLES ADAMSON, Deceased                              PLAINTIFF

           v.               Civil No. 07-1081

WADLEY HEALTH SYSTEM;
WADLEY REGIONAL MEDICAL CENTER;
WADLEY HEALTH SYSTEM MANAGED
HEALTH CARE EMPLOYEE BENEFIT
PLAN; WEBTPA EMPLOYER SERVICES,
LLC; AMERICAN HEALTH HOLDING, INC.;
and MICHAEL POTTER                                     DEFENDANTS


                          O R D E R

   Now on this 6th day of February, 2009, comes on for consideration plaintiff's **Supplemental Motion For Statutory Penalties** (document #42), and from said motion, and the response thereto, the Court finds and orders as follows:

   1.  Plaintiff Lisa Adamson brought suit under the Employee Retirement Income Security Act ("ERISA") to recover benefits due her under the Wadley Health System Managed Health Care Employee Benefit Plan, pursuant to **28 U.S.C. §1132(a)(1)(B)**. She also alleged a violation of the duty to provide requested Plan information under **29 U.S.C. §1132(c)(1)**.

   2.  On October 20, 2008, the Court entered an Order in which it reversed the denial of benefits, dismissed plaintiff's claims against separate defendants WebTPA Employer Services, LLC, and American Health Holdings, Inc., and allowed plaintiff fourteen

days in which to file a petition for attorney's fees.

The October 20 Order also stated that there was no evidence from which the Court could determine the date that plaintiff requested information from the Plan, or the date she received it, but "[t]hat it was in fact received is shown by the filing of the Administrative Record."[1]  The Court went on to say that "[i]n the absence of any evidence upon which to base a decision on this issue, this claim will be dismissed."  The Order did not, however, dismiss this claim in its decretal portion.

3.   Plaintiff filed the motion now under consideration on November 24, 2008.  In it, she requests an award of statutory penalties from the remaining defendants, which are collectively referred to as "the Wadley Defendants."  Because the statute in question imposes liability for statutory penalties only on a plan administrator, the Court will treat this motion as requesting such penalties only from separate defendant Michael Potter ("Potter"), the Chief Executive Officer of Wadley Health System, as he is the Plan Administrator.

4.   Potter resists the motion for two reasons, one of which is that it was filed too late, in that a motion to alter or amend judgment under **F.R.C.P. 59** must be filed within ten days of the entry of judgment.  There is no merit in this assertion, given

---

[1] As will be seen later in this Order, this statement was incorrect.  The letters upon which plaintiff bases her claim for statutory penalties were, in fact, part of the Administrative Record, and the documents which comprise the Administrative Record were not, in fact, received from the Plan Administrator.

-2-

that the October 20 Order was not a judgment which would trigger the provisions of **F.R.C.P. 59**.

5. Substantively, Potter resists the motion by saying that he cannot be held accountable for failure to send plaintiff copies of documents which plaintiff assembled and sent to him or the Wadley Defendants. This may well be true, but the Court does not perceive plaintiff's motion to complain of that particular failure. Plaintiff contends that Potter failed to provide her with documentation related to the adverse benefits decision, which she requested on March 1, 2006, and further that she had to collect the information herself in order to pursue her appeal of this decision. Plaintiff states in her motion that "neither the Plan nor its Administrator ever provided the requested information."

6. The statute in question, **29 U.S.C. §1132(c)(1),** provides that an ERISA plan administrator who fails to comply with a request for information within thirty days is subject to personal liability of up to $100 per day that the request is not honored. Certain restrictions apply. The request must be one made by a participant or beneficiary; it must be for information the administrator is required to supply under the statute; and it must be possible for the administrator to comply.

Under **29 U.S.C. §1133**, the administrator must

> provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has

been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

Regulations fleshing out this provision require such notification to:

\*   refer to the specific plan provisions on which the determination is based;

\*   describe any additional information necessary for the claimant to perfect an administrative appeal and explain why the information is necessary;

\*   describe the plan's review procedures and applicable time limits;

\*   inform the claimant of the right to bring a civil action following an adverse decision on review; and

\*   set out any internal rule, guideline, protocol or similar criterion used in making an adverse decision, or state that a copy thereof will be provided free of charge upon request.

**29 C.F.R. §2560.503-1(g).**

7.   Plaintiff attaches as an exhibit to her motion a letter to "Plan Administrator/Chief Executive Officer," dated March 1, 2006, in which her attorney asks that the Plan Administrator "provide us with copies of all documents relating to the adverse benefit determination."[2]

---

[2]This letter, as well as Potter's letters to plaintiff on March 20, 2006, and May 3, 2006, are a part of the Administrative Record. The March 1, 2006, letter is found at page 2 of the Record; the May 3, 2006, letter is found at page 1158; and the March 20, 2006, letter was added as a supplement to the Record on December 28, 2007, by the

Plaintiff attaches as another exhibit to her motion a letter dated March 20, 2006, directed by Potter to her (with a copy to her attorney), the body of which is reproduced here in its entirety:

> The Appeals committee has carefully reviewed the appeal letter written by your attorney. Regretfully, we must deny your appeal. Your health plan states Out-of-Network is not covered, see Schedule of Benefits. Your insurance card states you must use the Novasys network in Arkansas to receive in-network benefits. Baptist Hospital in Little Rock is not a contracted provider for Novasys. Notification of this was provided to you at the beginning of the hospital stay and attempts were made to assist you in complying with the health plan's rules. We must adhere to the requirements of the health plan and apply those requirements consistently to all members.

A third exhibit is another letter from Potter to plaintiff (also copied to plaintiff's attorney), this one dated May 3, 2006, the body of which is reproduced in its entirety here:

> I am writing in response to your attorney's request for reconsideration of the Appeal Committee's denial of your health plan appeal. There is no requirement under Wadley's health plan to perform a review of the Appeal Committee's decision, as it is final. However, as a courtesy and given the specific circumstances of your claim, the committee did reconvene, review the documents received from your attorney, and reconsider your appeal.
>
> The documents showed that you received notification, at the beginning of the hospital stay, that Baptist Hospital was not an in-network provider under your health plan. It also showed that several additional contacts were made in an attempt to ensure that both you and Baptist Hospital were aware that there were no out of network benefits and that a transfer to an in-network provider (St. Vincent or UAMS) would be needed. As you

---

filing of document #24.

>know, the health plan and your insurance card state that Novasys is the network you must use in Arkansas to receive in-network benefits.  Though it is ultimately the member's responsibility to be aware of their health plan guidelines, our personnel did notify you, as well as Baptist Hospital, that they were not a contracted provider for Novasys.  I would also assume that Baptist is aware of the managed care contracts they have in place.
>
>The documents and facts support the committee's decision and the denial of your appeal stands.  Notwithstanding this decision, in the event Wadley can assist in some other manner and resolve the situation amicably, please let us know.

Potter does not contend that any other notification of the adverse benefits decision -- or any documents whatsoever -- were provided.

8.  A comparison of Potter's letters with the requirements of **29 C.F.R. §2560.503-1(g)** indicates that Potter failed to provide adequate notice of the adverse benefits decision under **29 U.S.C. §1133**.  While there is some reference to Plan provisions, it is very sketchy reference and such as would require plaintiff to locate her own documents and pore over them to find what is referred to.  The letters in no way address any of the irregularities attendant upon this benefits decision which were enumerated in the Court's October 20 Order, such as the applicability *vel non* of an "emergency exception" in the Plan to the circumstances of this claim or how a choice was made between various inconsistent Plan provisions so as to reach the adverse decision.

There is also no information about the appeals process, nor about the right to contest the adverse decision in court. Moreover, there is no information about internal protocols that applied -- such as the statements of Shelley Dorsett (a key decision-maker in the benefits decision) that out-of-network benefits were not payable unless she specifically authorized them.

For these reasons, the Court concludes that Potter failed to comply with a request for information he was required to supply under **29 U.S.C. §1133**, triggering the penalty provision of **29 U.S.C. §1132(c)(1)**.

9. In reaching this conclusion, the Court is mindful of Potter's contention that plaintiff already had most of the documents she relied upon in her appeal, having gathered them up herself. Potter says he should not be penalized for failing to send plaintiff copies of documents she already had; that "there has been no showing that the Plan Administrator had *anything* that was kept from" plaintiff; and that plaintiff "has failed to show that the Plan Administrator *withheld* anything from her." (Emphasis in original.)

Potter's arguments seem to be based on the notion that, notwithstanding the statutory obligations, if a claimant is somehow able to otherwise gain the information needed, then non-compliance with those obligations is excusable. The Court rejects any such notion. **Section 1132(c)** is not just another discovery

device.  It exists "to provide plan administrators with an incentive to comply with the requirements of ERISA, and to punish noncompliance." **Starr v. Metro Systems, Inc.**, **461 F.3d 1036, 1040 (8th Cir. 2006)**.  As the Court explained in **Starr**,

> [i]n exercising its discretion to impose statutory damages, a court primarily should consider "the prejudice to the plaintiff and the nature of the plan administrator's conduct."  Although relevant, a defendant's good faith and the absence of harm do not preclude the imposition of the §1132(c)(1)(A) penalty.

*Id.* (internal citations omitted).

In her motion, plaintiff asserts -- and Potter does not deny -- that "neither the Plan nor its Administrator ever provided the requested information."  She states that she obtained the Summary Plan Description through the Wadley Health System "internet or intranet," and that otherwise,

> all documents that comprise the Stipulated Administrative Record were assembled by Plaintiff's counsel through requests to Charles Adamson's medical providers, WebTPA, and AHH, Inc. The Wadley Defendants never provided any memoranda, correspondence, communications, Plan documents, medical records or processing/administrative documents related to the adverse benefits determination.

It, therefore, can be seen that plaintiff had to pursue her claim without knowing whether the Wadley Defendants had anything in their files that would be beneficial to her, or detrimental to them.  That state of affairs placed plaintiff at a distinct disadvantage.  It also was not helpful to the Court.

In reviewing the Administrative Record to determine what

occurred with plaintiff's claim, the Court struggled a bit because there appeared to be pieces of the puzzle missing. Now, with the filing of the motion now under consideration, that "appearance" seems to be the fact: there really are missing pieces of the puzzle -- i.e. pieces of information that, no doubt, could be found in the files of the Wadley Defendants. This, unfortunately, seems to be precisely the situation the statute was enacted to avoid.

    10. Plaintiff fully prevailed in her claim for benefits -- despite Potter's inappropriate actions in failing to provide requested documentation to which she was properly entitled. Thus, although Potter's conduct violated the statute, plaintiff will ultimately receive the benefits due her. From this, the Court concludes that a penalty should be assessed -- but at only half the statutory rate, or $50.00 per day for the relevant time period.

    The starting point of Potter's failure to respond to a request for documentation is thirty days after the request, or April 1, 2006. The end point suggested by plaintiff is October 20, 2008, when the Court reversed the adverse benefits decision.

    Potter does not contest this end point or suggest any other date, and the Court would normally consider it reasonable, in light of Potter's continued failure to open the files of the Wadley Defendants throughout this case. That period totals 934

days and, if calculated at the reduced rate of $50.00 per day, the penalty would compute to $46,700.00.  The Court notes, however, that the last briefs and pleadings on the matter were filed February 14, 2008, but the Court did not enter its Order reversing the benefits decision until October 20, 2008 -- a period of more than eight months.  The Court is not persuaded that this entire eight-month period should be included in computing the penalty, but, rather, believes that the "end point" of the penalty period should reasonably be fixed as a date sixty days after the Court received the last pleadings and briefs on the issue. Accordingly, the Court will consider the "end point" of the penalty period to be April 14, 2008, reducing the period upon which the penalty is computed to 745 days.  Based upon that reduction, the penalty will be computed at the rate of $50.00 per day for 745 days to produce a total of $37,250.00.

**IT IS THEREFORE ORDERED** that plaintiff's **Supplemental Motion For Statutory Penalties** (document #42) is **granted**, and a penalty of Thirty-Seven Thousand Two Hundred Fifty and no/100 Dollars ($37,250.00) is assessed against separate defendant Michael Potter, to be paid as part of the judgment entered contemporaneously herewith in favor of plaintiff.

**IT IS SO ORDERED.**

   /s/ Jimm Larry Hendren
   **JIMM LARRY HENDREN**
   **UNITED STATES DISTRICT JUDGE**

-10-